UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZEFERINO RAMIREZ et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No. 06-civ-13677 (LAK) |
| | ) |
| CSJ & CO., INC d/b/a/ AZURE DELI et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' PARTIAL MOTION TO DISMISS**

Alan S. Goudiss (AG 5569)
Marc D. Ashley (MA 8896)
Erin M. Shute (ES 1710)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022-6069
(212) 848-4000

and

David A. Colodny (DC 4234)
Molly K. Biklen (MB 3491)
URBAN JUSTICE CENTER
666 Broadway, 10th Floor
New York, New York 10012
(646) 602-5600

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT ................................................................................................................. 8

    I.    Plaintiffs' Claims Under the FLSA that Accrued Prior to December 1, 2004
        Should Not Be Dismissed ..................................................................... 8

        A.    Defendants' Failure to Post the Notice Mandated by Statute
              Requires that the Statute of Limitations be Tolled Until Plaintiffs
              Became Aware of Their Rights ................................................... 9

              1.    The FLSA Statute of Limitations is Subject to
                    Equitable Tolling. ......................................................... 10

              2.    Equity Demands Tolling in This Case. ......................................... 16

        B.    Plaintiffs Are Also Entitled to Tolling on Contractual Grounds .............. 17

              1.    The Parties' Tolling Agreements Expressly Prohibited
                    Plaintiffs From Commencing an Action Prior to
                    Termination of Each Agreement .................................................... 17

               2.    Plaintiffs Consistently Negotiated in Good Faith. ......................... 19

        C.    Plaintiffs Have Adequately Alleged Willfulness ..................................... 21

    II.    Plaintiffs are Entitled to Uniform Reimbursement Costs .................................... 22

CONCLUSION ............................................................................................................ 23

## TABLE OF AUTHORITIES

### CASES

A.H. Phillips, Inc. v. Walling, 324 U.S. 490 (1945) .........................................................................16

Acierno v. Barnhart, No. 03-CV-6217, 2007 WL 196557 (2d Cir. Jan. 24, 2007) ......................16

Archer v. Sullivan County, No. 95-CV-5214, 1997 WL 720406
    (6th Cir. Nov. 14, 1997).........................................................................................................14, 15

Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305 (S.D.N.Y. 1998)...............................................23, 24

Callowhill v. Allen-Sherman-Hoff Co., 832 F.2d 269 (3rd Cir. 1987) ........................................14

Cf. Smith v. McGinnis, 208 F.3d 13 (2d Cir.), cert. denied, 531 U.S. 840 (2000).......................10

Chan v. Sung Yue Tung Corp., No. 03-CV-6048, 2007 WL 313483
    (S.D.N.Y. Feb. 1, 2007) ............................................................................................................24

Cheng v. Metro. Life Ins. Co, 94-C 1995 WL 37843 (S.D.N.Y.),
    aff'd., 71 F.3d 404 (2d Cir. 1995) .............................................................................................14

Claeys v. Gandalf, Ltd., 303 F. Supp. 2d 380 (S.D. Ohio 2004)..................................................15

Cortez v. Medina's Landscaping, No. 00-CV-6320, 2002 WL 31175471
    (N.D. Ill. Sept. 30, 2002) ....................................................................................................11, 13

Damassia v. Duane Reade, Inc., No. 04-CV-8819, 2005 WL 1214337
    (S.D.N.Y. May 20, 2005)...........................................................................................................23

E.E.O.C. v. Kentucy State Police Dep't, 80 F.3d 1086 (6th Cir.),
    cert. denied, 519 U.S. 963 (1996) ............................................................................................14

English v. Pabst Brewing Co., 828 F.2d 1047 (4th Cir. 1987),
    cert. denied, 486 U.S. 1044 (1988) ..........................................................................................14

Galvin v. Vermont, 598 F. Supp. 144 (D. Vt. 1984) .....................................................................14

Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528 (1986)..............................................14

Herbert Ltd. P'ship v. Elec. Arts, Inc., 325 F. Supp. 2d 282 (S.D.N.Y. 2004) .............................19

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132 (2d Cir. 1999).......................................................9

Iglesias-Mendoza v. La Belle Farm, Inc., No. 06-CV-1756, 2007 WL 268233
(S.D.N.Y. Jan 29, 2007).................................................................................11

Illinois Power Co. v. Figgie Int'l, Inc., No. 89-CV-4632, 1989 WL 152928
(N.D. Ill. Nov. 19, 1989)................................................................................19

Johnson v. Nyack Hosp., 86 F.3d 8 (2d Cir. 1996)..........................................9, 10

Kale v. Combined Ins. Co. of Am., 861 F.2d 746 (1st Cir. 1988).....................14

Kamens v. Summit Stainless, Inc., 586 F. Supp. 324 (E.D. Pa. 1984)............11

Kephart v. Inst. Of Gas Tech., 581 F.2d 1287 (7th Cir. 1978),
cert. denied, 450 U.S. 959 (1981) .............................................................14, 16

Leeds v. Meltz, 85 F.3d 51 (2d Cir. 1996)........................................................2

Less v. Nestle Co., Inc., 705 F. Supp. 110 (W.D.N.Y. 1988)...........................14

Litzler v. CC Invs., L.D.C., 362 F.3d 203 (2d Cir. 2004)................................12

M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134 (2d Cir. 1990)........................21

McLaughlin v. Richland Shoe Co., 486 U.S. 128 (1988)................................22

Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41 (1st Cir. 2005) ..........14, 16

Mickle v. Christie's Inc., 207 F. Supp. 2d 237 (S.D.N.Y. 2002) ...................20

Patraker v. Council on the Env't, No. 02-CV-7382, 2003 WL 22703522
(S.D.N.Y. Nov. 17, 2003) ............................................................................11

Photopaint Techs., L.L.C. v. Smartlens Corp., 335 F.3d 152 (2d Cir. 2003) ........................18, 19

Sipas v. Sammy's Fishbox, No. 05-CV-10319, 2006 WL 1084556
(S.D.N.Y. Apr. 24, 2006)...............................................................................11

State of New York v. Sullivan, 906 F.2d 910 (2d Cir. 1990) ........................16

Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., No. 03-CV-6731,
2005 WL 1863853 (S.D.N.Y. Aug. 8, 2005).................................................21

Travellers Int'l. A.G. v. Trans World Airlines, Inc., 41 F.3d 1570 (2d Cir. 1994)......................20

United States. v. Timmons Corp., No. 103- CV-00951RFT, 2006 WL 314457
(N.D.N.Y. Feb. 8, 2006) ...........................................................................18, 19

Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318 (2d Cir. 2004)................9, 10, 12, 13, 16

Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.,
    246 F. Supp. 2d 886 (S.D. Ohio 2003) ............................................................................15

Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74 (2d Cir. 2003)............................10

## STATUTES

29 C.F.R. § 514.6.........................................................................................................................3

29 C.F.R. § 516.4 .............................................................................................8, 10, 13, 15

29 U.S.C. §§ 206-07 .............................................................................................................8

29 U.S.C. § 255(a) ...........................................................................................................9, 10

Age Discrimination in Employment Act, 29 U.S.C. § 621-34 .....................................13

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1467 ...........12

Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (2000) .............................................1

N.Y. Labor Law § 196-d................................................................................................6

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq..........................13

Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) ................................................12

Plaintiffs Zeferino Ramirez, Felipe Labra, Natalio de Jesus, and Javier Labra ("Plaintiffs") submit this memorandum of law in opposition to Defendants' motion to dismiss, in part, Plaintiffs' claims in Counts I, II, and VI of the Complaint.[1]

## PRELIMINARY STATEMENT

In a belated effort to escape liability for years of employee mistreatment, Defendants now distort virtually beyond recognition the parties' efforts to resolve this dispute. From 1997 through 2005, Defendants violated Plaintiffs' rights under the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. §§ 201-219 (2000), and the New York State Labor Law §§ 190-99, 650-665, by failing to pay them minimum wage and overtime, illegally retaining gratuities paid by delivery customers, illegally deducting items from wages, and failing to pay for the cost of purchasing and maintaining required uniforms. Plaintiffs' various claims covering the full tenure of their employment are legally actionable, and Defendants are not entitled at this early pleading stage to the equivalent of summary judgment on their affirmative defense of the statute of limitations.

*First*, the statute of limitations for Plaintiffs' claims for violations that occurred throughout their employment should be both equitably and contractually tolled. Defendants' illegal conduct prevented Plaintiffs from learning about their minimum wage and overtime rights, and the Court should exercise its discretion to toll the statute of limitations until the time that Plaintiffs had actual knowledge of their legal rights. Plaintiffs are also clearly entitled to tolling of the limitations period on contractual grounds because the parties continuously entered into successive tolling agreements before the Complaint was filed that expressly prohibited

---

[1] Plaintiffs Natalio de Jesus and Javier Labra have accepted offers of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure, and Defendants' motion is not addressed to their claims. Defendants also do not seek to dismiss the Complaint in its entirety, but rather only a portion of Plaintiffs' primary claims for underpayment of wages as well as their claim for reimbursement of uniform costs.

Plaintiffs from commencing any court proceeding throughout the duration of the agreements. Defendants' strained arguments to the contrary – and accusation that Plaintiffs' counsel have negotiated with Defendants' counsel in bad faith – are wholly without merit.  *Second*, Plaintiffs have adequately alleged that Defendants' violations were willful, and are therefore entitled to a minimum three-year statute of limitations under the FLSA.  *Third*, Plaintiffs have sufficiently alleged that Defendants did not reimburse them for the cost of purchasing and maintaining the blue shirts that Defendants required them to wear as uniforms .

On this motion, the Court must accept as true all of the Complaint's factual allegations and view them in the light most favorable to the Plaintiffs, drawing all reasonable inferences in their favor.  See e.g., Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).  Under this standard, Defendants' partial motion to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

The Azure Deli is a large delicatessen located in midtown Manhattan with eat-in and take-out facilities.  (Compl. ¶¶ 11, 27-28, 31.)  Plaintiffs Zeferino Ramirez and Felipe Labra were employed by Defendants at the Azure Deli from, respectively, May 2000 to April 2005 and June 1997 to January 2005.  (Id. ¶¶ 4, 6.)  Throughout their period of employment, Plaintiffs' primary responsibilities included receiving and stocking supplies, cleaning public areas, and making deliveries to customers.  (Id. ¶¶ 30-31.)  During portions of their employment, Plaintiffs often worked twelve-hour days, six days a week.  During other portions of their employment, Plaintiffs worked at least ten hours per day, six days a week.  (Id. ¶¶ 34-35.)  Despite these long days, Plaintiffs received little, if any, break time each day.  (Id. ¶ 37.)

Defendants failed to pay Plaintiffs the minimum wage for significant portions of their employment and also failed to pay overtime compensation throughout their employment.  (Id. ¶¶ 38-39.)  Defendants required Plaintiffs to purchase and wear uniforms consisting of blue

shirts bearing an Azure Deli logo.  Defendants did not reimburse Plaintiffs for the cost of these required uniforms nor pay them to maintain or clean them.  (Id. ¶¶ 43-45.)  During the period of Plaintiffs' employment, Defendants failed to post notice of employees' rights under the FLSA as required by 29 C.F.R. § 514.6 and New York Labor Law.  (Id. ¶ 58.)  Plaintiffs were not aware of their rights under these laws until after they left Defendants' employ.  (Id. ¶ 59.)

Through their attorney, David Colodny, and prior to him, Sonal Desai, an attorney from Shearman & Sterling LLP, Plaintiffs negotiated with Defendants starting in October 2005 in a good-faith effort to resolve this dispute before initiating a formal litigation action. Throughout those negotiations, the parties corresponded primarily through letters, e-mail, and telephone calls.  Although it is not feasible to review every piece of correspondence here, some of those communications are particularly relevant to Defendants' motion and are submitted to clarify issues regarding the settlement process that Defendants have improperly raised.[2] Plaintiffs have submitted certain correspondence between the parties' counsel that they otherwise deem to be confidential settlement communications only because Defendants first introduced various extrinsic materials with their motion papers.[3]

---

[2] To the extent that the Court is inclined to consider Defendants' extrinsic materials, Plaintiffs' corresponding materials – which provide the full and accurate context to the parties' negotiations – should be considered as well.  However, the various factual issues and evidentiary materials that Defendants have introduced on this motion are better suited for consideration, if at all, at the summary judgment stage.

[3] Defendants have improperly divulged the parties' confidential settlement communications and, in accusing Plaintiffs' counsel of bad faith, have implicitly waived Defendants' right to confidentiality over their settlement communications.  Although Plaintiffs feel compelled to reveal additional communications in order to oppose Defendants' motion and rebut Defendants' accusation of bad faith, they do not consider their submissions to constitute a waiver of the confidential nature of those communications or any others.  Plaintiffs believe that all settlement-related correspondence should remain confidential except for the narrow purpose of resolving this motion.

By letter dated October 24, 2005, Plaintiffs notified Defendants that Ramirez and de Jesus had claims arising out of their employment at the Azure Deli.  (See Declaration of David A. Colodny, dated Feb. 20, 2007 ("Colodny Decl."), Ex. L.)  On October 24, 2005, the parties entered into their first tolling agreement.  (Declaration of Kevin M. Doherty, dated Jan. 31, 2007 ("Doherty Decl.") ¶ 10.)  On February 17, 2006, Ms. Desai sent Defendants' counsel, Mr. Doherty, an e-mail regarding the status of settlement negotiations and inquiring whether Defendants wished to enter into a second tolling agreement.  (Colodny Decl., Ex. A.)  Mr. Doherty states in his declaration that Ms. Desai represented in her February 17, 2006 e-mail that Plaintiffs "would amend their computation/demand at least for the period covered by the records."  (Doherty Decl. ¶ 17.)

Contrary to Mr. Doherty's statement, Ms. Desai nowhere promised that Plaintiffs "would amend their computation/demand."  Her e-mail only affirmed that Plaintiffs were hopeful that the parties would be able to come to an agreement on the damages amounts for the March 2003 to April 2005 timeframe.  (Colodny Decl., Ex. A ("I believe we should be able to come to some resolution regarding the March 2003 through April 2005 timeframe within the next two weeks").)  Ms. Desai's e-mail further stated that there remained a significant open issue regarding damages for the period prior to March 2003.  As Ms. Desai's February 17, 2006 e-mail further indicates, Plaintiffs intended to enter into the third tolling agreement on the understanding that it would give Defendants time to locate pertinent employment records for the pre-March 2003 time period.  Ms. Desai asked Mr. Doherty whether Defendants were willing to enter a new tolling agreement (Colodny Decl., Ex. A); Mr. Doherty returned the executed tolling agreement later that same day (Colodny Decl., Ex. B).

On May 10, 2006, Mr. Colodny informed Mr. Doherty that, based on the information available to them at that time, Plaintiffs believed that Defendants had violated the minimum wage and overtime laws, spread of hours law, and law requiring employers to pay for uniform purchases and cleaning.  Mr. Colodny further stated that Defendants still had not made their position clear with regard to the hours worked by and wages paid to Plaintiffs, and reiterated that Plaintiffs still had received no offer of settlement from Defendants.  (Colodny Decl., Ex. C.)

Mr. Doherty now curiously asserts that Mr. Colodny supposedly induced him into entering into a new tolling agreement in May 2006 by stating that future settlement negotiations would be "significantly different" from prior discussions.  (See Doherty Decl. ¶ 19.)  Mr. Colodny's letter, however, says *nothing* about future negotiations being different from prior negotiations.  To the contrary, his letter clearly stated that he expected that Plaintiffs' damages computations would *not* significantly change based on the information Defendants had provided. (Colodny Decl., Ex. C at 2 ("We previously provided our calculations to you for settlement purposes, and although we may revise those calculations slightly based on the additional information we have received, the revised calculations *will not likely be significantly different*.") (emphasis added).)

On May 12, 2006, just two days after Mr. Colodny notified Mr. Doherty of Plaintiffs' settlement position, Mr. Doherty told him during a telephone call that Defendants would enter into a new tolling agreement.  Defendants subsequently entered into the fourth tolling agreement on May 31, 2006.  (Colodny Decl., Ex. D.)

In June 2006, Mr. Colodny met with Mr. Felipe Labra and agreed that the Urban Justice Center would represent Mr. Labra in connection with claims arising out of his

employment at the Azure Deli.  On July 14, 2006, Mr. Colodny faxed a letter to Mr. Doherty

notifying him that the Urban Justice Center represented Mr. Labra, and asked whether

Defendants would enter into a new tolling agreement so that the parties could continue to discuss

settlement.  (Colodny Decl., Ex. E.)  When Mr. Felipe Labra became involved in the dispute, Mr.

Colodny learned that Mr. Labra and Mr. Ramirez had additional claims against Defendants under

New York Labor Law § 196-d, which makes it illegal, inter alia, for an employer to retain any

portion of an employee's tips.

On July 20, 2006, Mr. Colodny faxed Mr. Doherty a letter detailing Plaintiffs'

legal and factual claims and revised damages calculations.  The letter explained that the total

estimated damages had risen to more than $420,000 as a result of the addition of Mr. Felipe

Labra as a plaintiff, as well as the significant damages arising from Defendants' violations of

N.Y. Labor Law § 196-d.  On July 26, 2006, Mr. Colodny faxed a letter to Mr. Doherty asking

for a response to his prior inquiry as to whether Defendants would enter into an additional tolling

agreement.  (Colodny Decl., Ex. F.)

On July 27, 2006, Mr. Doherty sent an e-mail to Mr. Colodny questioning

whether Plaintiffs were negotiating in good faith.  (Colodny Decl., Ex. G.)  In response, Mr.

Colodny sent Mr. Doherty an e-mail on July 31, 2006, making clear that the parties' failure to

reach a settlement was not due to Plaintiffs' lack of good faith but rather was attributable to

fundamental disagreements about the relevant facts and law.  Mr. Colodny's e-mail made

abundantly clear that Plaintiffs' claims were well supported factually and legally, and that

Plaintiffs did not anticipate reducing their damages claims significantly from those reflected in

the July 20, 2006 letter.  (Colodny Decl., Ex. H at 2 ("I don't think these revisions will

significantly affect the total damages claimed").)  Following Plaintiffs' thorough explanation of

their settlement position, Defendants again knowingly and voluntarily entered into additional

tolling agreements for Mr. Ramirez, Mr. de Jesus, and Mr. Felipe Labra.  Mr. Doherty notified

Mr. Colodny on August 2, 2006 that he had signed the agreements and would send them the next

day.  (Colodny Decl., Ex. M.)

During September and October 2006, Mr. Doherty and Mr. Colodny engaged in a

series of correspondence in which they discussed the parties' contentions as to the facts

underlying Plaintiffs' claims.  (Colodny Decl. ¶ 22.)  Defendants sought to convince Plaintiffs

that the amount of tips retained by Defendants was trivial; however, the documentary records

produced by Defendants appeared to be incomplete and entirely inconsistent with the quantity of

deliveries that Plaintiffs maintain they performed.  During the course of further settlement

discussions in October, the parties entered into their final set of tolling agreements.  (Colodny

Decl., Ex. N.)

On October 25, 2006, Mr. Doherty asked whether Plaintiffs would be willing to

engage in mediation.  (Colodny Decl. ¶ 23.)  Plaintiffs carefully considered Defendants' offer of

mediation and decided that the parties' positions were so far apart that mediation was unlikely to

be worthwhile.  Mr. Colodny notified Mr. Doherty that Plaintiffs did not want to engage in

mediation at that time, but remained willing to engage in further settlement discussions.

(Colodny Decl., Ex. I.)

After Plaintiffs notified Defendants that they were going to file a complaint,

Defendants slightly increased their offers of settlement.  Defendants offered plaintiff de Jesus

$1,200, plaintiff Felipe Labra $20,000, and plaintiff Ramirez $20,000 — still only a small

portion of their requested damages.  (Colodny Decl., Ex. J.)  Thus, even after Defendants had

been notified that Plaintiffs intended to take court action, Defendants still made only nuisance

settlement offers of little more than $40,000, in stark contrast to their offers of judgment for $125,000 only a month later.  (Colodny Decl., Ex. K.)  Plaintiffs filed the Complaint on December 1, 2006.  Mr. Javier Labra joined the case as a plaintiff although he was not a party to any of the tolling agreements.  By letter dated December 26, 2006, Defendants made offers of judgment to each of the Plaintiffs.  Defendants offered $70,000 to Mr. Ramirez, $3,000 to Mr. De Jesus, $48,000 to Mr. Felipe Labra, and $4,000 to Mr. Javier Labra.  (Colodny Decl., Ex. K.)  Mr. de Jesus and Mr. Javier Labra subsequently accepted the offers of judgment, while Mr. Ramirez and Mr. Felipe Labra did not.

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS UNDER THE FLSA THAT ACCRUED PRIOR TO DECEMBER 1, 2004 SHOULD NOT BE DISMISSED

Throughout the course of Plaintiffs' employment, Defendants violated the FLSA by failing to pay them minimum wage and overtime, and by not posting a notice regarding minimum wages as required by the Department of Labor.  29 U.S.C. §§ 206-07; 29 C.F.R. § 516.4 (notice requirement).  As a result of Defendants' failure to post the required notice, Plaintiffs were not aware that they were receiving less than the statutory minimum wage or that they were entitled to overtime for each hour they worked beyond 40 hours in a workweek. Because Defendants' illegal conduct prevented Plaintiffs from learning about their minimum wage and overtime rights, the Court should exercise its discretion to toll the statute of limitations until the time that Plaintiffs had actual knowledge of their rights under the law.  Moreover, the parties entered into enforceable tolling agreements that tolled more than a year of the limitations period for Plaintiff Ramirez and approximately four months for Plaintiff Felipe Labra. Defendants' attempt to evade their statutory and contractual obligations is groundless.

**A.** **Defendants' Failure to Post the Notice Mandated by Statute Requires that the Statute of Limitations be Tolled Until Plaintiffs Became Aware of Their Rights**

A claim under the FLSA accrues at the end of the pay period for which the violation occurred. The FLSA provides a limitations period of two years, which is extended to three years where the violations are willful. See 29 U.S.C. § 255(a); Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999). Plaintiffs Felipe Labra and Ramirez received sub-minimum wages and no overtime pay during their employment at the Azure Deli beginning, respectively, in 1997 and 2000. Plaintiffs are entitled to have the statute of limitations tolled for that portion of their claims that seemingly falls outside the limitations period because Defendants failed to post the notice required by federal statute and, in so doing, concealed from Plaintiffs the existence of their legal rights and cause of action. Tolling of the limitations period is warranted in these circumstances and fully consistent with the terms and purpose of the FLSA.

As a general matter, statutes of limitation are "subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing." Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004); see also Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996) ("Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances.").[4] The Second Circuit has held that equitable tolling is appropriate where the plaintiff was prevented from learning about a cause of action within the statutory period or the defendants are responsible for concealing its existence. See Veltri, 393 F.3d at 323 (citing Pearl v. City of Long

---

[4] Defendants do not argue, and no court has suggested, that the two- and three-year periods for filing claims under the FLSA set forth in 29 U.S.C. § 255(a) are jurisdictional bars not subject to equitable tolling. Cf. Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.), cert. denied, 531 U.S. 840 (2000) (explaining that the one-year period for bringing claims under the Antiterrorism and Effective Death Penalty Act is a statute of limitations and therefore subject to equitable tolling).

Beach, 296 F.3d 76, 80 n.3 (2d Cir. 2002), cert. denied, 538 U.S. 922 (2003)).  In determining whether the defendants' conduct concealed the existence of the plaintiff's claim or otherwise prevented the plaintiff from becoming aware of it, the "relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action."  Id.  Courts must further consider whether the plaintiff acted with diligence throughout the period he seeks to toll.  See Johnson, 86 F.3d at 11; see also Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003).

### 1.    The FLSA Statute of Limitations is Subject to Equitable Tolling.

To implement the FLSA, the Secretary of Labor has issued a regulation requiring that every employer employing workers subject to its minimum wage provisions "shall post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy."  29 C.F.R. § 516.4.  In turn, the prescribed notice must provide, in large-type letters, information about the minimum wage and time-and-a-half pay for overtime, and instruct employees to contact the nearest Wage and Hour Division office for additional information.  See WH Publication 1088, at http://www.dol.gov/esa/regs/compliance/posters/flsa.htm.  Plaintiffs have alleged that Defendants failed to post this notice and a similar one required by the New York State Labor Law (Compl. ¶ 58), and that Plaintiffs were otherwise unaware of their rights under the federal and state wage and hour laws (id. ¶ 59).

This Court and others have recognized that an employer's failure to post the legally required notice mandates tolling of the statute of limitations where employees have no actual notice of their rights under the FLSA.  See Iglesias-Mendoza v. La Belle Farm, Inc., No. 06-CV-1756 (CM), F.R.D., 2007 WL 268233, at *5 (S.D.N.Y. Jan 29, 2007); Patraker v. Council

on the Env't, No. 02-CV-7382 (LAK), 2003 WL 22703522, at *2 (S.D.N.Y. Nov. 17, 2003);

accord Cortez v. Medina's Landscaping, Inc., No. 00-CV-6320, 2002 WL 31175471, at *5 (N.D.

Ill. Sept. 30, 2002); Kamens v. Summit Stainless, Inc., 586 F. Supp. 324, 328 (E.D. Pa. 1984);

see also Sipas v. Sammy's Fishbox, No. 05-CV-10319 (PAC), 2006 WL 1084556, at *3, n.4

(S.D.N.Y. Apr. 24, 2006) (ordering that collective action notice in FLSA case be distributed to

all employees who had worked for defendant in the preceding seven years because some claims

might be subject to equitable tolling).

   Defendants mistakenly cite this Court's Patraker decision as if it supports their

position.  Although in Patraker the Court ultimately held that tolling was not proper because the

plaintiff had retained counsel at the beginning of the period he sought to toll, it assumed that, in

other circumstances (present here), failure to post the required notice could trigger equitable

tolling.  2003 WL 22703522, at *2.  Unlike in Patraker, Plaintiffs here did not obtain counsel nor

become aware of their rights under the FLSA until after they had left Defendants' employ.

(Compl. ¶ 59.)  Soon after Plaintiffs learned of their rights, they obtained counsel and thereafter

entered into good-faith negotiations with Defendants to resolve their claims.  Here, therefore,

Plaintiffs had no actual or constructive knowledge of their rights during the period they seek to

have equitably tolled.

   Although the Second Circuit has not squarely addressed this precise issue, it has

held in analogous circumstances that a defendant's failure to comply with a regulatory disclosure

regime is the type of concealment that justifies equitable tolling.  See Veltri, 393 F.3d at 324;

Litzler v. CC Invs., L.D.C., 362 F.3d 203, 207 (2d Cir. 2004) (statute of limitations under the

Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), was equitably tolled where defendant

failed to make statutorily required disclosures; allowing defendant to escape liability by avoiding statutory reporting requirements would "manifestly frustrate the purpose of Congress").

The Second Circuit's reasoning in Veltri, a case under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1467, is particularly instructive here.  The defendants in Veltri argued that the plaintiff's claim, filed eleven years after being denied certain pension benefits, was barred by ERISA's six-year statute of limitations.  393 F.3d at 322.  The court rejected this argument, holding that Veltri was entitled to equitable tolling because the defendant retirement fund had failed "to comply with federal regulations requiring it to notify Veltri of his right to administrative appeal and to maintain an action in court."  Id. at 322, 324.  In finding equitable tolling applicable, the Second Circuit explained that the fund's lack of compliance with the regulatory requirements must be viewed in light of the purpose of the "regulatory notice requirement and of Congress's policy of protecting the interests of pension plan participants."  Id. at 324.  In construing the notice requirement, the Second Circuit found that "[t]he notice regulation assumes that a reasonable beneficiary would not otherwise be aware of a cause of action."  Id.  It further noted that "congressional policy favors placing [the] burden of disclosure on pension plans."  Id.  In light of this background, the Second Circuit held that the "failure to comply with the regulatory obligation to disclose the existence of a cause of action to the plan participant whose benefits have been denied is the type of concealment that entitles plaintiff to equitable tolling of the statute of limitations."  Id.

So too here.  As in Veltri, the posting requirement of 29 C.F.R. § 516.4 assumes that employees do not otherwise know their rights under the FLSA.  See Cortez, 2002 WL 31175471, at *5 ("Mandating that employers post a notice informing employees of their rights only makes sense on the opposite presumption; if employees generally know their rights or have

a duty to learn those rights on their own, notice would be superfluous.")  Put differently, the

Secretary of Labor has made a considered judgment that it is unreasonable to expect employees

to know their legal rights without affirmative disclosure by their employers.

Although the posting requirement of § 516.4 is not as explicit with respect to

employees' potential remedies as that under ERISA, the prescribed FLSA notice would have

informed Plaintiffs of their rights to be paid minimum wage and overtime and be afforded legal

remedies.  By failing to comply with the posting requirement, Defendants concealed the

existence of Plaintiffs' cause of action because Plaintiffs could not have known that their pay fell

below the statutory minimum if they were unaware of a minimum wage in the first place.

Defendants' failure to post the notice required by federal statute thus triggers – indeed, mandates

– application of the equitable tolling doctrine here.[5]

---

[5] Using similar reasoning, a majority of circuit courts and numerous district courts have held that equitable tolling is appropriate in analogous circumstances where employers failed to post notice of employees' rights as required by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-34.  See, e.g., Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 48 (1st Cir. 2005) (employer's violation of the EEOC posting requirement may toll Title VII statute of limitations where plaintiff had no actual knowledge of cause of action); E.E.O.C. v. Ky. State Police Dep't, 80 F.3d 1086, 1096 (6th Cir.), cert. denied, 519 U.S. 963 (1996) ("If an employer fails to comply with [29 U.S.C.] § 627 by not posting the required ADEA notices, the charge-filing period will not begin to run until the employee either retains an attorney or acquires actual knowledge of his rights under the ADEA.") (internal quotation marks and citation omitted); Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 753 (1st Cir. 1988) ("If . . . the employee has no knowledge of his rights and his ignorance is due to . . . [the] failure of the defendant to post the required EEOC notices, then an initial case for equitable tolling has been made.); Callowhill v. Allen-Sherman-Hoff Co., 832 F.2d 269, 272 (3rd Cir. 1987) ("[A]n employer's neglect to post the notice . . . will toll the running of the period for filing the administrative charges, at least until the 'aggrieved person seeks out an attorney or acquires actual knowledge of his rights under the [ADEA]'" (quoting Bonham v. Dresser Indus., Inc., 569 F.2d 187, 193 (3d Cir. 1978)); English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987), cert. denied, 486 U.S. 1044 (1988) (same); Kephart v. Inst. Of Gas Tech., 581 F.2d 1287, 1289 (7th Cir. 1978), cert. denied, 450 U.S. 959 (1981) (equitable tolling permissible because policy behind notice requirement under the ADEA would not be realized if the "employers were free to breach the posting requirement without penalty"); see also Cheng v. Metro. Life Ins. Co, 94-CV-0808, 1995 WL 37843, at *4

The case upon which Defendants primarily rely does not further their cause.

Archer v. Sullivan County, No. 95-CV-5214, 1997 WL 720406 (6th Cir. Nov. 14, 1997), an unpublished Sixth Circuit decision (see Def. Mem. at 4),[6] is not inconsistent with the many cases finding tolling applicable in these circumstances.  Archer involved claims regarding the use of compensatory time in lieu of overtime payments before and just after the Supreme Court's decision in Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528 (1986), and the congressional amendment to the FLSA requiring local governments to comply with its provisions by April 15, 1986.  Archer, 1997 WL 720406, at *1.  The Sixth Circuit found that the claims of those plaintiffs hired by the Sheriff's Department after April 15, 1986 were untimely, rejecting plaintiffs' argument that the statute should be tolled on the grounds that notice would not have given plaintiffs any information about the complicated compensatory time at issue.  Id. at *4.  As the court explained, the notice prescribed by § 516.4 "does not mention the distinction between employees hired before April 15, 1986, and those hired on or after that date."  Id. Accordingly, the court did not find that the failure to post the notice justified tolling the statute of limitations.  The Archer court did *not* reject equitable tolling generally nor discuss whether tolling would be appropriate where, as here, the notice prescribed by 29 C.F.R. § 516.4 would

---

(S.D.N.Y.), aff'd, 71 F.3d 404 (2d Cir. 1995) (employer's failure to post information required by the ADEA tolled statute of limitations for filing charge with the EEOC); Less v. Nestle Co., Inc., 705 F. Supp. 110, 115 (W.D.N.Y. 1988) (same); Galvin v. Vermont, 598 F. Supp. 144, 148 (D. Vt. 1984) ("Because it would be manifestly unfair to permit employers to violate the posting requirement without penalties, courts have uniformly held that failure to post notice tolls the 180-day limitation period until the claimant acquires actual knowledge of his rights under the Act or seeks the services of an attorney.").  These courts have all found that an employer's violation of the applicable law by failing to post the required notice of employees' rights serves as a basis to toll the limitations period or the administrative charging period so long as the employees do not have an awareness of their rights.

[6]  Although the Sixth Circuit does not prohibit citation to unpublished opinions, see 6th Cir. R. 28(g), only published opinions have precedential value that subsequent panels cannot disregard. See 6th Cir. R. 206(c).

have explicitly notified plaintiffs of their claim.  Here, Plaintiffs allege that Defendants failed to

pay them the minimum wage and overtime as required by the FLSA — the very subjects

addressed directly by the required notice.  Thus, unlike in <u>Archer</u>, Defendants' failure to post the

required notice deprived Plaintiffs of the precise information that would have apprised them of

their claims.[7]

Defendants' contention that equitable tolling is inappropriate here because

Congress did not expressly provide for it in the statute (<u>see</u> Def. Mem. at 5) is contrary to the

rule that tolling is permissible even in a statute that does not expressly provide for it if

"'consistent with Congress' intent in enacting' the statutory scheme."  <u>Acierno v. Barnhart</u>, No.

03-CV-6217, 2007 WL 196557, at *4 (2d Cir. Jan. 24, 2007) (quoting <u>Bowen v. City of New</u>

<u>York</u>, 476 U.S. 467, 480 (1986)).  The Second Circuit has found equitable tolling consistent with

legislative intent where the statutory scheme is clearly "protective" of plaintiffs' rights.  <u>See,</u>

<u>e.g.</u>, <u>State of New York v. Sullivan</u>, 906 F.2d 910, 917 (2d Cir. 1990).

As discussed above, the FLSA is a remedial statute protective of employees'

rights.  <u>See</u> <u>A.H. Phillips, Inc. v. Walling</u>, 324 U.S. 490, 493 (1945).  The Second Circuit and

other courts have found equitable tolling consistent with the text and purpose of similar remedial

employment statutes that do not have express tolling provisions (and which, in the case of the

---

[7]  The other cases upon which Defendants rely, also from the Sixth Circuit, are equally
inapposite.  In <u>Claeys v. Gandalf, Ltd.</u>, 303 F. Supp. 2d 890 (S.D. Ohio 2004), a decision on
summary judgment, the court found that tolling was inapplicable where the plaintiff had actual
knowledge of his rights under the FLSA, as evidenced by his filing of a suit for unpaid overtime
against another company over a year and a half prior to joining the suit against Gandalf on the
same grounds.  In <u>Viciedo v. New Horizons Computer Learning Center of Columbus, Ltd.</u>, 246
F. Supp. 2d 886 (S.D. Ohio 2003), also an opinion on summary judgment, the court rejected the
plaintiffs' equitable tolling claim, in part, because the only evidence of defendant's failure to
post the notice were the plaintiffs' statements that they never saw the poster.  The court found
that this evidence did not raise a material issue of fact regarding the poster's absence from the
workplace in light of the defendant's evidence that the notice had indeed been posted in the
office.  <u>Id.</u> at 904.

ADEA, use the same two-tiered statute of limitations).  See, e.g., Veltri, 393 F.3d at 323

(ERISA); Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41, 48 (1st Cir.

2005) (Title VII); Kephart v. Inst. of Gas Tech., 581 F.2d 1287, 1289 (7th Cir. 1978), cert.

denied, 450 U.S. 959 (1981) (ADEA).  Moreover, the FLSA limitations period does not set forth

the type of exclusive exceptions that have led some courts to conclude with respect to other

statutesthat Congress did not intend to permit more generalized equitable exceptions.  See

Acierno, 2007 WL 196557, at *5 (finding equitable tolling under sections 405(c)(1)(B) and

(c)(4) of the Social Security Act inconsistent with congressional intent where "Congress

provided 10 exceptions to the limitations period and indicated that these exceptions are exclusive

by setting forth that they consist 'only' of the specifically enumerated circumstances").  This

case law demonstrates that equitable tolling in these circumstances would be fully consistent

with the terms and purpose of the FLSA.

### 2.       Equity Demands Tolling in This Case.

Plaintiffs have alleged that Defendants did not pay them in accordance with the

law and that Defendants also failed to post the notice of employee rights required by the FLSA.

(Compl. ¶¶ 38-39, 41, 57.)  Plaintiffs further allege that they were not aware of their rights under

the FLSA until after leaving Defendants' employ.  (Id. ¶ 59.)  In these circumstances, as

discussed above, Plaintiffs are entitled to have the limitations period tolled until the time that

they gained actual knowledge of their rights.

Although Defendants note that if the Court rejects equitable tolling in this case,

Plaintiffs could nonetheless obtain some relief for their claims under the New York Labor Law

(see Def. Mem. at 5), the New York Labor Law and the FLSA provide different recovery for

Plaintiffs' claims.  Consequently, the potential for some recovery under the New York Labor

Law will not put Plaintiffs in the same position they would be in if the FLSA statute were

16

equitably tolled.  In any event, the weight of equities that requires tolling in this case is certainly not diminished simply because Defendants violated both federal *and* state law.

**B.**  **Plaintiffs Are Also Entitled to Tolling on Contractual Grounds**

As described above, the parties entered into a series of successive tolling agreements in an attempt to resolve Plaintiffs' claims through negotiation.  Defendants' argument that Plaintiffs are not entitled to tolling of the statute of limitations pursuant to those tolling agreements – voluntarily entered into between the parties in good faith – is contrary to the express terms of the agreements.

**1.**  **The Parties' Tolling Agreements Expressly Prohibited Plaintiffs From Commencing an Action Prior to Termination of Each Agreement.**

Defendants argue that Plaintiffs are not entitled to the benefit of the parties' tolling agreements because the agreements supposedly required Plaintiffs to file a complaint before the agreements expired.  This frivolous argument is flatly contradicted by the plain language of the agreements.

The tolling agreements did *not* require Plaintiffs to commence an action during the designated tolling period; to the contrary, the tolling agreements expressly *prohibited* such conduct.  The second paragraph in each tolling agreement explicitly barred Plaintiffs from taking any additional legal action during the duration of the tolling period.  Specifically, the tolling agreements prohibited Plaintiffs from "serving, filing, or otherwise commencing, prior to the Termination Date . . . any proceeding in any court or other forum asserting any of the Claims." (See Doherty Decl., Exs. B ¶ 2, C ¶ 2, D ¶ 2.)  Therefore, pursuant to the express and unambiguous terms of the tolling agreements, Plaintiffs would have breached the contracts had they filed the Complaint before the termination date of any such agreement.  The agreements clearly mandated that Plaintiffs wait until after expiration of each agreement before filing.

Plaintiffs filed their Complaint on December 1, 2006, one month after the final tolling agreement had expired, appropriately allowing Plaintiffs to toll the statute of limitations for the specified periods of time covered by the various tolling agreements.

Defendants also argue that they did not agree to waive a statute of limitations defense after expiration of the tolling agreements.  (See Def. Mem. at 6.)  Although Defendants may not have explicitly waived a statute of limitations defense, they nonetheless expressly and unequivocally agreed to toll the statute of limitations for the time periods specified in the parties' successive tolling agreements.  Courts within the Second Circuit have upheld tolling agreements in numerous cases where such agreements did not contain any language explicitly barring a statute of limitations defense.  See, e.g., Photopaint Techs., L.L.C. v. Smartlens Corp., 335 F.3d 152, 160 (2d Cir. 2003); Herbert Ltd. P'ship v. Elec. Arts, Inc., 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004); United States. v. Timmons Corp., No. 103-CV-00951 (RFT), 2006 WL 314457, at *12 (N.D.N.Y. Feb. 8, 2006).  Unable to cite any cases from within this Circuit, Defendants rely solely on Illinois Power Co. v. Figgie Int'l, Inc., No. 89-CV-4632, 1989 WL 152928, at *8 (N.D. Ill. Nov. 19, 1989), in which the court denied entitlement to tolling pursuant to the Uniform Commercial Code ("UCC"), which prohibits parties from extending the limitations period under any circumstances.  See id. at *8.  The UCC obviously has no relevance here, and, in addition, the FLSA does not prohibit parties from contractually extending the limitations period.  Therefore, the absence of language in the parties' tolling agreements explicitly barring a statute of limitations defense in no way bars Plaintiffs' entitlement to tolling under those agreements.

Defendants further contend that the express termination dates within the tolling agreements preclude Plaintiffs from tolling the statute of limitations for those periods covered by

the agreements once each agreement had expired.  (See Def. Mem. at 6.)  This nonsensical

argument would negate the very purpose and utility of the tolling agreements.  The agreements

effectively tolled the statute for the time periods they covered, and that tolling was clearly

effective beyond termination of each agreement.  As the Second Circuit held in Photopaint, 335

F.3d at 160, the tolling agreements at issue there, which covered a specific time period from

October 2000 through July 2001, successfully extended the statute of limitations for that

designated period.  The Court stated that it was "undisputed . . . as a matter of law" that the

parties tolled the applicable statute of limitations period for nine months and that Photopaint

timely confirmed its award after expiration of the tolling agreement.  See id. at 160-61; see also

Timmons Corp., 2006 WL 314457 at *12.  Here, as in Photopaint (and as in most tolling

agreements), the parties placed limitations on the length of the tolling periods as a means to

remove that period of time from statute of limitations calculations.  The existence of termination

dates within the parties' tolling agreements clearly does not bar Plaintiffs' entitlement to tolling.

2.       **Plaintiffs Consistently Negotiated in Good Faith.**

To sustain the groundless contention that Plaintiffs negotiated in bad faith to

resolve this dispute, Defendants' counsel has twisted the text of the parties' correspondence,

fabricating language that does not exist and promises that Plaintiffs' counsel never made.

Defendants have provided no factual or legal basis for their accusation of bad faith.

Defendants argue that Plaintiffs negotiated in bad faith by failing to decrease their

settlement demands, turning down an offer of voluntary mediation, and failing to agree with

Defendants' factual assertions.  (See Def. Mem. at 7-8.)  Defendants' argument boils down to the

illogic that Plaintiffs must have negotiated in bad faith merely because the parties ultimately did

not reach a resolution of their dispute before litigation commenced.  The reality is that Plaintiffs

negotiated in good faith throughout the tolling periods and, in accordance with the tolling

agreements, steadfastly maintained their desire to negotiate a settlement in lieu of litigation.  (See Colodny Decl., Exs. C, H, L, O.)

New York law implies a covenant of good faith and fair dealing into every contract.  See Travellers Int'l. A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir. 1994).  To violate this implied covenant, a party must act dishonestly or in a manner inconsistent with the justified expectations of the other party.  Mickle v. Christie's Inc., 207 F. Supp. 2d 237, 252 (S.D.N.Y. 2002).  This covenant does not undermine a party's "general right to act on its own interests" nor require a party to take actions contrary to its own economic interests.  See, e.g., M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990) (internal citation omitted); Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., No. 03-CV-6731, 2005 WL 1863853, at *7 (S.D.N.Y. Aug. 8, 2005).  Clearly, a party seeking to negotiate a settlement does not act in bad faith merely by refusing to adopt the other side's view of the facts and law.[8]

Plaintiffs failed to decrease materially their settlement demands through the negotiation process because they believed they were justified in seeking greater recovery than Defendants had offered.  Plaintiffs believed that the credit card receipts shown to them by Defendants were incomplete and were thus reluctant to reduce their demands on the basis of inadequate documentation.  (See Colodny Decl., ¶ 25.)  Plaintiffs' increased monetary demands over time were the result of changed circumstances, including the addition of Mr. Felipe Labra as a party to the dispute and access to additional information concerning tips that Defendants had withheld from Plaintiffs.  (Colodny Decl., Exs. E ¶ 4, H ¶ 4.)  Plaintiffs increased their settlement demands in accordance with (and in proportion to) these new developments, while continuing to

---

[8]  Defendants' argument that the tolling agreements should be voided for lack of consideration is also frivolous.  Through each tolling agreement, Defendants gained the opportunity (but not the guarantee) to resolve this matter before a court action was filed.  Obviously, this recurring opportunity to avoid litigation, and its related costs, provided a valuable benefit to Defendants.

state their desire to reach a settlement.  (Id.)  Plaintiffs similarly did not engage in bad-faith

negotiations in deciding not to submit to mediation.  Plaintiffs believed that mediation would not

serve any useful purpose because Defendants' settlement offers did not approach what Plaintiffs

felt justified in seeking.  (Colodny Decl., Ex. I.)

Plaintiffs repeatedly apprised Defendants of their settlement position, and

Defendants through their counsel knowingly entered into successive tolling agreements.  For

example, although on July 27, 2006 Defendants' counsel accused Plaintiffs of negotiating in bad

faith, Defendants entered into an additional tolling agreement with Plaintiffs five days later.

(Colodny Decl., Exs. G, M.)  As a matter of fact and law, Plaintiffs are entitled to the benefit of

the successive tolling agreements into which the parties voluntarily entered.[9]

### C.    Plaintiffs Have Adequately Alleged Willfulness

Defendants appear to suggest that, independent of the issues of equitable tolling

and the enforceability of the parties' tolling agreements, the Court should dismiss all claims

beyond December 1, 2004, the two-year statute of limitations for non-willful violations of the

FLSA.  (See Def. Mem. at 3.)  Yet Plaintiffs have adequately alleged Defendants' willful

violations of the FLSA, and there is no basis upon which to dismiss any part of their claims.

A violation of the FLSA is considered willful if the "employer either knew or

showed reckless disregard for the matter of whether its conduct was prohibited by the statute."

McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  Plaintiffs' allegations of

willfulness are *not* conclusory.  Rather, the Complaint alleges that Defendants violated the most

basic provisions of the FLSA relating to minimum wage and overtime and apparently made no

effort to conform their employment practices to the standards required by law.  (Compl. ¶¶ 38,

---

[9] Indeed, Defendants' own negotiation conduct could be construed as an effort to forestall the
initiation of litigation without any sincere intent to offer a reasonable settlement.

41-42, 56-57.)  Plaintiffs have therefore sufficiently alleged that Defendants showed reckless

disregard for whether their conduct was prohibited by the FLSA.  See McLaughlin, 486 U.S. at

133; see also Ayres v. 127 Rest. Corp., 12 F. Supp. 2d 305, 309 (S.D.N.Y. 1998) (employer's

violation was willful where there was no evidence that employer "made reasonable inquiries into

the relevant law, or that it actually reviewed its . . . practices, or that it relied on the advice of

counsel").  As Ayres suggests, willfulness can be inferred from a defendant's conduct, and the

employer must then proffer evidence demonstrating its attempt to comply with its legal

obligations.  Id.

       Of course, whether Plaintiffs' evidence is sufficient to prove willfulness is a

factual matter that can properly be resolved, at the earliest, only at the summary judgment stage.

Plaintiffs are entitled to take discovery to determine Defendants' state of mind with regard to

FLSA compliance.  See Damassia v. Duane Reade, Inc., No. 04-CV-8819, 2005 WL 1214337, at

*2-3 (S.D.N.Y. May 20, 2005) (willfulness for FLSA purposes is a state of mind, may be averred

generally, and is an inappropriate issue for resolution on motion to dismiss).

## II.     PLAINTIFFS ARE ENTITLED TO UNIFORM REIMBURSEMENT COSTS

       Plaintiffs are entitled to damages for the cost of purchasing and maintaining their

blue, button-down, logo-bearing polo shirts, because such articles of clothing constitute a

required uniform pursuant to New York Labor Law.  A "required uniform is clothing worn by an

employee, at the request of an employer, while performing job-related duties," but does not

"include clothing that may be worn as part of an employee's ordinary wardrobe."  N.Y. Comp.

Codes R. & Regs. Tit. 12, § 137-3.13.  Where an employer permits its employees to wear

"ordinary basic street clothing" or allows for variations in the types of garments worn, such

clothing would not constitute a uniform.  See Ayres, 12 F. Supp. 2d at 310.  However, where (as

here) an employer mandates that its employees wear a specific type or style of clothing, such as a

"blouse or jacket of a specific or distinctive style, color, or quality, such clothing would be considered uniforms" even if an individual could wear such items outside the workplace. See id.; see also Chan v. Sung Yue Tung Corp., No. 03-CV-6048 (GEL), 2007 WL 313483, at *22 (S.D.N.Y. Feb. 1, 2007) (employees' required work clothing, consisting of either suits or jackets, pants, shirts, and ties of specific colors, constituted a uniform under New York law; employees could recover cost of such uniforms plus statutory weekly allowance associated with uniform maintenance).

Defendants required Plaintiffs to wear blue, button-down shirts bearing the Azure Deli's logo. The required logo clearly illustrates that such clothing was specific to the workplace. Pursuant to New York law, these distinctive shirts constituted uniforms, and Plaintiffs are therefore entitled to reimbursement of their uniform purchase and cleaning costs.

### CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety.

Dated: New York, New York
February 20, 2007

SHEARMAN & STERLING LLP

By:   /s/ Alan S. Goudiss
Alan S. Goudiss (AG 5569)
Marc D. Ashley (MA 8896)
Erin M. Shute (ES 1710)
599 Lexington Avenue
New York, New York 10022-6069
Tel: (212) 848-4000
Fax: (212) 848-7179

URBAN JUSTICE CENTER

By:   _Molly K. Biklen_
Molly K. Biklen (MB 3491)
David A. Colodny (DC 4234)
666 Broadway, 10th Floor
New York, NY 10012
Tel.: (646) 602-5600
Fax: (212) 533-4598

*Attorneys for Plaintiffs*

23

## CERTIFICATE OF SERVICE

I, Erin Marie Shute, one of Plaintiffs' attorneys, hereby certify that on February

20, 2007, I served a copy of the Memorandum of Law in Opposition to Defendants' Partial

Motion to Dismiss and Declaration of David A. Colodny on the attorneys listed below in the

manner indicated:

Kevin M. Doherty
Greenwald Doherty, LLP
151 North Main Street
P.O. Box 490
New City, New York 10956
*Attorneys for Defendants* (via Electronic Filing)